**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **v.** | § | **CRIMINAL CASE ACTION NO.** |
| | § | **1:26-CR-00060-TRJ** |
| **JULIE EDWARDS,** | § | |
| | § | |
| **Defendant** | § | |

## SENTENCING MEMORANDUM

COMES NOW Defendant Julie Edwards ("Ms. Edwards"), by and through undersigned counsel, who hereby files this Sentencing Memorandum in connection with her sentencing scheduled for August 13, 2026. In support, Ms. Edwards shows as follows:

## ACCEPTANCE OF RESPONSIBILITY

From the outset, Ms. Edwards has unhesitatingly accepted responsibility. She filed no motions challenging any evidence. She rather promptly took steps to enter her plea, essentially instantaneous with the filing of the Information. And she thereby acknowledged knowingly transferring a payment of over $600,000 in closing on a residence, which funds were tainted from the underlying wire fraud of Todd Burkhalter and other involved individuals.

In so acknowledging her factual guilt, Ms. Edwards respectfully asks the Court to maintain perspective of her situation, and consider her posture within the Drive Planning network. Ms. Edwards was not a leader within the organization. She did not market any product or security; she had no policy-making authority. While she communicated extensively with Burkhalter and did have some client contact, her role was exclusively administrative. Any substantive communications to investors were made at the direction of Mr. Burkhalter, and occasionally the other two principals. Ms. Edwards asks the Court to consider this sense of perspective.

As noted below, a sentence of straight probation is suitable for Ms. Edwards when considering the circumstances of the offense, along with her personal characteristics and lack of criminal history. But perhaps most importantly, Ms. Edwards submits that her recent behavior and attention to her restitution obligations shows a sincere commitment to making the Government whole; this while she divests herself entirely from the Burkhalter-controlled environment from which she made the unfortunate choice that has placed her before the Court.

## SENTENCING PRINCIPLES

The Sentencing Guidelines developed by the United States Sentencing Commission are entirely advisory. While they must be considered, they in no way constrain the Court from fashioning a reasonable sentence as it deems appropriate. United States v. Crawford, 407 F3d 1174, 1178 (11th Cir. 2005 (citing United States

v. Booker, 543 U.S. 220 (2005)). The guideline ranges are simply generalizations. See e.g., United States v. Hunt, 549 F3d 1180, 1184-85 (11th Cir. 2006). The Court must consult and consider the applicable guideline range. However, the resulting range is merely one factor to consider among many in setting a fair sentence. Crawford, 407 F3d at 1178-79.

The Eleventh Circuit rejects any presumption that guideline sentences are inherently reasonable. Hunt, 459 F3d at 1184. District courts in turn may not presume that a guideline sentence is reasonable. Rita v. United States, 551 U.S. at 338, 351 (2007). Extraordinary circumstances are not required to justify an outside of guideline sentence. Gall v. United States, 128 S.Ct. 586 (2007).

Going one step further, the Eleventh Circuit and sister circuits actually acknowledge that a sentence inside of the calculated guideline range can produce an unreasonable result. Hunt, 459 F3d at 1184; United States v. Jimenez-Beltre, 440 F3d 424, 518 (1st Cir. 2006) (*en banc*); United States v. Lazenby, 439 F3d 928 (8th Cir. 2006). As the First Circuit explained in Jimenez-Beltre:

> The guidelines are still **generalizations** that can point to outcomes that may appear unreasonable to sentencing judges in particular cases. Some of the guidelines in particular cases …were **deliberate deviations or turned tendencies into absolutes…** Booker's remedial solution makes it possible for courts to impose non-guideline sentences that override the guidelines, **subject only to the ultimate requirement of reasonableness.**

Jimenez-Beltre, 440 F3d at 518 (emphasis supplied).

As aptly noted by our Circuit, the overall objective in sentencing, "is to lock in a sentence that is not too short, not too long, but just right to serve the purposes of § 3553(a)." U.S. v. Irey, 612 F3d 1160, 1197 (11th Cir. 2010) (*en banc*). See also Hunt, 459 F3d at 1184. In applying §3553(a), the Court has discretion to sentence within the calculated guideline or impose a more lenient or severe sentence "provided the resulting sentence is reasonable in light of the § 3553(a) factors". United States v. Shelton, 400 F3d 1325, 1334 (11th Cir. 2005).

§ 3553(a) factors especially pertinent to this case are as follows:

> The court shall impose a sentence **sufficient, but not greater than necessary**, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> **(1)** the nature and circumstances of the offense and **the history and characteristics of the defendant;**
>
> ......................

18 U.S.C. § 3553(a) (emphasis supplied).

## GUIDELINES AND ADJUSTED OFFENSE LEVELS

### Calculations

The parties all agree that Ms. Edwards' corrected adjusted Offense Level is 18 against a criminal history category One, yielding a guideline range of 27 to 33 months. As the Probation Officer ultimately recognized, role enhancement is intrinsically improper in that there was no one else involved with Ms. Edwards' money laundering transaction. But even if there had been someone else, Ms.

Edwards behavior was not aggravating, unlike Messrs. Burkhalter and Bradford. Edwards had no authority to set policy or priorities or engage in marketing, and she worked completely at the behest of Burkhalter, and to a lesser extent Bradford. And while Ms. Edwards was the Chief Administrative Officer, she was never formally designated this position but rather grew into it; holding this merely over the time period 2022-2024. And, irrespective of title, Ms. Edward's position was entirely one of administrative support.[1]

**Underlying Behavior Relating to the Instant Offense**

Ms. Edwards also submitted to an extended interview with the SEC in 2024, with no indication whatsoever that she was anything but cooperative and forthright, although she acknowledges she should have revealed her home purchase transaction. She followed this with a multi-hour meeting with the FBI in December 2024. There is no indication that anything she stated in either interview was untrue or misleading.

. While Edwards acknowledges that it was improper for her to not notify the SEC as to her home transaction involving the tainted funds, she did immediately relinquish title of the home to the court-appointed Receiver overseeing the

[1] Ms. Edwards notes under the new U.S.S.G. §2B1.1 guidelines that will take effect in November, that her loss offense level would be enhanced by 12 levels (instead of the 14 now) and that this would yield an adjusted guideline range of 21-27 months. Ms. Edwards asks that the Court consider this range as an appropriate guideline. In any case, as Ms. Edwards will show, a fully probated sentence is appropriate for this first-time offender who has already nearly satisfied restitution obligations.

transaction, Kenneth Murena, when requested in 2025. Since that time, she maintained possession of the home with Mr. Murena's full consent, paying full market rent for nearly two years up to a total of over $20,000; She maintained the property in optimal condition, and ultimately vacated the premises when asked. Largely due to how she maintained the property, the property just recently sold for $604,000 and the buyer has closed on it. Therefore, as matters stand today, Ms. Edwards has nearly satisfied her restitution obligation of $630,000, before her case even closes. Ms. Edwards attaches here as her **Exhibit One** an email from attorney Adriana M. Pavon, who represents Mr. Murena's office. Ms. Pavon's email incorporates an email from Gary Mills of Harry Norman Realtors referencing Ms. Edwards' cooperation with the sale and transition of the home to the new buyer. The email speaks for itself in showing Edwards' commitment to making amends for her transgression. And Ms. Edwards will of course fully comply with all of her restitution obligations to the extent that they are not satisfied by her prior rent payments, and the ultimate sale proceeds.

**<u>Personal Characteristics</u>**

Ms. Edwards had never previously been arrested. She had led a responsible life and maintained regular employment in her field of Office Administration. From a personal standpoint, she has a demonstrated history of compassion and caring and accepting responsibility. This is reflected in her adopting Jillian Wilkie and raising

her into adulthood. She was also the primary caretaker of her niece Rebecca Richey, whom Ms. Edwards accepted as her own daughter prior to Rebecca's passing in May 2024, when the Drive Investigation was just taking shape. Ms. Edwards is continuing to raise Rebecca's daughter, Ember, within the home. Ms. Edwards is likewise the sole caretaker of her mother, Carolyn Thompson. Carolyn, as noted within the PSR, is 81 years old with multiple ailments, including AFIB, diabetes, and scoliosis. Edwards is committed to her family.

Edwards encloses herein as her **Consolidated Exhibit Two** three letters. The first is from longtime friend Rhonda Gazaway, Chief Revenue Officer of Expansive Workspace. Ms. Gazaway attests to Ms. Edwards' character and her demonstrated history of consistent action, compassion, and generosity. Next is the letter from Ms. Edwards' adopted adult daughter, Jillian Wilkie. Ms. Wilkie attests to Ms. Gazaway's comments, highlighting Edwards' subordinating her needs to those of others. Ms. Wilkie also notes the special role Ms. Edwards plays in caring for supporting Ember, her deceased niece's daughter, who has special challenges of her own. Finally, Edwards presents a letter from mother Thompson, likewise fully dependent upon Edwards, who highlights Edwards' caring nature and her successfully transitioning to a new business in the face of her conviction and adversity.

Despite the recent upheaval, Ms. Edwards remains committed to these responsibilities, despite herself living with Lupus, while also suffering from premature ovarian failure potentially exposing her to cancer. Given all that has occurred, she has dealt with intensive stress, but has risen to the occasion, in moving forward to take the next steps in her life.

**Ongoing Activity and Future Plans**

Having accepted responsibility, Ms. Edwards has kept her composure and maintained the right attitude in looking forward, committed to her obligation to supporting Carolyn and Ember and rebuilding her career.

To this end, Ms. Edwards has successfully incorporated her new business. She has already signed up clients, at her new firm of Curated Events Group, LLC. If permitted to serve her sentence on probation, she plans to have a website going live in September or October 2026. As of July 1, she had already secured two new clients, one an executive coach and retreat entity based in Montana, as well as a client concierge for a mid-sized resort in North Georgia, that will host events up to 45 people. Ms. Edwards' role will be to set up cruises, dinner reservations, cooking classes, and generally consult as requested, in the capacity of a 1099 contractor. Ms. Edwards also has set up a travel agency, to serve as an adjunct to this event-planning business. She has identified many potential clients within Georgia, and plans to reach out and develop a client base as soon as feasible upon completing this case.

While she initially will be doing the work herself for these companies, she expects to grow into hiring and contracting others.

She is also currently working with a business coach who lives in North Carolina, with plans to meet three times per year with her, including times outside of this jurisdiction should the Court approve.

Most importantly, her new business has no affiliation whatsoever with Drive Planning or any of the former principals, clients, or brokers. And as Ms. Edwards will explain to the Court, she is determined to divest any association with the financial planning business, all the while maintaining fully transparent business operations for purposes of probation compliance and her own professional standards.

Ms. Edwards is also active in her church. Out of a congregation of 3,000, she was invited along with 150 others to participate in a leadership mentorship program earlier this year. Given her responsibilities this summer in coordinating the sale of the house and the move out, she was unable to accept, but expects to be chosen for the next cohort. In the meantime, she is working toward exercising a role within the church reflecting her interest in ministries devoted to the spiritual needs of female parishioners. In any case, the Court can rest assured that Ms. Edwards, freed of the shackles of Drive Planning and the unhealthy environment therein, will thrive and become a professional business owner, employing others, and giving back to the community. Ms. Edwards will provide further additional details at sentencing.

## APPROPRIATE SENTENCE

Ms. Edwards submits that a sentence of three years probation would most effectively serve the purposes of 18 U.S.C. §3553(a). She promptly accepted responsibility, and since that period has shown a transformed mindset, which is reflected in her dealings with the Receiver and setting up her own business. She has successfully moved to a new home, undertaking responsibilities while starting her business under stress and pressures that might have hamstrung and taken down a lesser individual.

Indeed, Ms. Edwards is the perfect candidate for probation. Her offense arises out of one transaction, done while she was in the course of employment at Drive, and under the direction of Burkhalter. She has removed herself from that environment, and is rapidly establishing herself in another, one that involves no such financial framework or temptation. She has been totally compliant with her pretrial release conditions. With Ms. Edwards never having been arrested before, and removed from that situation, the Court need not worry about her reoffending. And, perhaps most notably, she has essentially made the Government whole in turning over the property to the receiver and paying rent to it, while maintaining the home, and cooperating fully in the sale of the property to a third party paying nearly the full sum of the loss amount.

This by no means downplays the seriousness of her offense. It should be noted that Ms. Edwards, irrespective of what her sentence will be, has paid heavily for her transgression and conviction. She will be stripped of her real estate license, be humbled as a convicted felon, and of course she lost the home that was the result of her offense, placing her back in the position she was in prior to the purchase. But she stands ready to move on with her life, support her dependents, and serve the community through her work and personal endeavors. This justifies the sentence of probation, on whatever terms the Court deems suitable.

## CONCLUSION

**WHEREFORE**, for the above reasons, Ms. Edwards respectfully requests a probated sentence of 3 years. Edwards meets the criteria for probation; she has no prior criminal history; she has divested herself from Drive Planning into new horizons, and has effectively settled her restitution. From any objective perspective, she presents an extremely low risk of reoffending; this is not only in view of the above, but in considering her extensive support system and documented concern for dependents who wholly rely upon her. She will be subject to the strict standards and oversight of probation, which can indeed be crafted to address any concerns that might arise in her completing her sentence on release.

Respectfully submitted, this 10th day of August 2026.

*/s/Mark R. Jeffrey*
MARK R. JEFFREY
GA Bar No. 390048
Attorney for Defendant

2470 Windy Hill Road
Suite 300
Marietta, GA 30067
770-933-5377

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served Ms. Edwards' SENTENCING MEMORANDUM, through electronic filing via the CM/ECF system to the following counsel of record:

Kelly Connors
Office of the US Attorney
600 Richard Russell Federal Building
75 Ted Turner Drive
Atlanta, GA 30303

This 10th day of August 2026.

*/s/ Mark R. Jeffrey*
MARK R. JEFFREY
GA Bar No. 390048
Attorney for Defendant

2470 Windy Hill Road
Suite 300
Marietta, GA 30067
770-933-5377